PEASE (DWIGHT v.).   See Case No. 4,217.

## Case No. 10,882.

### PEASE v. McCLELLAND.

[2 Bond, 42.] 1

Circuit Court, S. D. Ohio.   Oct. Term, 1866.

BILLS AND NOTES—INNOCENT HOLDER—FAILURE OF CONSIDERATION—NOTE GIVEN FOR HORSE IN UNSOUND CONDITION.

1. Where a negotiable note is transferred by indorsement to a third person who is ignorant of any infirmity affecting its validity, and the indorsement is before the maturity of the note, the indorsee is an innocent holder, and may recover against the maker, although as to him there has been a failure of consideration.

2. An indorsee of a note given in payment for a horse, in the sale of which there was a fraudulent concealment of the animal's unsound condition, is not an innocent holder of the note, if the proof shows that he and the seller were the

1 [Reprinted by permission.]

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

owners of the horse, and that in the sale the seller acted as his agent.

3. If, at the time of the sale of a horse, the animal is subject to a disease known to the seller, which he conceals, and which was not discoverable by the buyer with ordinary vigilance, the sale is fraudulent.

[Cited in Wafer v. Harvey Co. Bank, 46 Kan. 610, 26 Pac. 1036.]

[This was an action at law by George B. Pease against J. M. McClelland.]

John C. Grannis and Corwine & Walker, for plaintiff.

George E. Pugh, for defendant.

OPINION OF THE COURT: The case submitted to the jury is an action on a promissory note for $500, dated November 9, 1859, payable one year after date to the order of Lyman W. Pease, and by him indorsed to the plaintiff. The defense is, that the note was given in payment for a horse purchased by the defendant of said Lyman W. Pease, in the sale of which a fraud was committed by him in the concealment of a disease of which the said Pease had knowledge, and which rendered the horse of no value. The defendant insists there was an entire failure of the consideration for which the note was given, and that he is not therefore liable to pay it. It is urged, however, by the counsel for the plaintiff, that he is the holder of the note by indorsement from L. W. Pease, without notice of any fraud in the sale of the horse, or any failure of consideration, and that the defendant can not avail himself of this defense in this action. Where a negotiable note is transferred by indorsement to a third person who is ignorant of any infirmity affecting its validity, and the indorsement is before the maturity of the note, the indorsee is an innocent holder, and may recover against the maker, although as to him there has been a failure of consideration. In this case it does not appear from the evidence whether the note was indorsed before or after its maturity. This, however, is an inquiry which does not seem to be material in this case. If the jury find from the evidence that Lyman W. Pease, who sold the horse to the defendant, was a part owner with the plaintiff, and acted for him as his agent in the sale of his interest, he may be viewed as legally a party to the sale, and can not claim the rights and immunities of an innocent holder of the note. The jury have heard the testimony of the defendant on this point. If credited by the jury, he proves that at the time of the sale the plaintiff owned an interest of one-half in the horse, and that his son was the owner of the other half, and acted as agent for his father in the sale of his interest.

The important and perhaps the only question in the case is, whether a fraud was perpetrated in the sale of the horse. If there was an intentional concealment of an essential infirmity in the horse, affecting his usefulness and value, the jury will probably have no difficulty in reaching the conclusion that both L. W. Pease, the son, and George P. Pease, the father and the plaintiff in this suit, both had knowledge of and were implicated in the fraud. And, as often decided by courts, fraud vitiates all transactions among men; and if it attaches to the sale of the horse in question, the note on which this suit is based is a nullity, and no recovery can be had on it. The court does not propose to recite in full the evidence given by the parties on the question of fraud. It will be obvious to the jury there are some material discrepancies in the facts stated by them and other witnesses. The defendant insists that the animal, at the time of the sale, was subject to a disease known to the seller, which he concealed, and which was not discoverable by the buyer with ordinary vigilance. If the jury find this to be the truth, there can be no question that a gross fraud was enacted. The conclusion of the jury will depend greatly on the credit they shall give to the testimony of the defendant, given by him as a witness. He states that at the sale he discovered no ailment or deficiency in the horse, except a crack in one hoof, which he did not deem important, and that Pease assured him there was nothing else that was wrong with him. He also swears he put the horse in a buggy, and after driving him about five miles he became exceedingly lame in one of his forelegs, and broke out into a profuse sweat; and that after keeping him in pasture for six months, and trying him a second time, he failed in the same way. He also says, under oath, that he considers the horse of no value. The witness Kirkpatrick states that some time before the sale to defendant he noticed the lameness of the horse on one occasion, and inquired of Pease, the father, what was its cause. To this Pease replied he did not know, but was fearful it was rheumatism, as his sire had died of that disease. He requested the witness to say nothing about it. On the other hand, the jury have the deposition of the plaintiff, in which he denies that the horse was subject to any disease at the time of the sale, and was in every respect entirely sound, except the crack in the hoof. The case is with the jury.

The jury returned a verdict for the defendant.